IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COLIBRI CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA 04-397 (MML) |
| | ) | |
| MERIT DIAMOND CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**MERIT DIAMOND CORPORATION'S**
**MOTION TO COMPEL DISCOVERY**

## Introduction

Defendant and Counterclaim Plaintiff, Merit Diamond Corporation, hereby moves to compel discovery including, but not limited to, (1) further deposition testimony by Colibri employees and its trademark counsel; and (2) unredacted document production pertaining to Colibri's decision to use the 'Serena' trade name and to sell the Disputed Design Jewelry. Colibri asserts that its use of the name and design were done in good faith upon advice from counsel, while continuing to assert attorney-client privilege regarding many of the relevant attorney-client communications. Colibri's attempt to selectively use the attorney-client communications to its advantage constitutes waiver of the privilege by implication.

WHEREFORE, Merit Diamond Corporation respectfully requests that this Honorable Court grant its Motion to Compel Further Discovery. Merit requests that Colibri be ordered to produce **all documents** in unredacted form, including the documents contained on Colibri's Privilege Log.[1]

[1] Counsel has represented that certain redactions relate to another trademark application unrelated to this matter. Without waiving its rights, Merit is not seeking disclosure of the information related to the unrelated trademark application.

Additionally, deponents who have asserted privilege and refused to answer questions pertaining to Salter & Michaelson's role in the initial decisions to use the name Serena as well as their role in the decision to continue using the name and the disputed design in the face of the cease and desist letter should be compelled to answer deposition questions pertaining to these issues.

In support of its motion, Merit Diamond Corporation submits the Memorandum of Law attached hereto.

MERIT DIAMOND CORPORATION

By: ____________________

J. Richard Ratcliffe #2603
RATCLIFFE BURKE HARTEN & ELIAS LLP
Counsel for Defendant
1600 Financial Plaza
Providence, Rhode Island 02903
Telephone: 401.331.3400
Facsimile: 401.331.3440

Of counsel:

David J. Molton, Esq. (DM-1106)

*pro hac vice*
Counsel for Defendant
BROWN RUDNICK BERLACK ISRAELS LLP
7 Times Square
New York, NY 10036
Telephone: 212.704.0100
Facsimile: 212.704.0196

## CERTIFICATION

I hereby certify that on the 12th day of October, 2005, a true and accurate copy of this motion was mailed, postage prepaid, to:

Steven E. Snow, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903

Margaret M. Cannizzaro

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COLIBRI CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA 04-397 (MML) |
| | ) | |
| MERIT DIAMOND CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MERIT DIAMOND CORPORATION'S MOTION TO COMPEL DISCOVERY**

**Introduction**

This trademark action involves issues concerning Colibri Corporation's ("Colibri") use of the name "Serena" and its use of certain jewelry designs similar to those produced by Merit (the "Disputed Designs"). Defendant, Merit Diamond Corporation, ("Merit") has moved to compel discovery including, *inter alia*, further deposition testimony and document production pertaining to the decision of Colibri to continue to use the "Serena" trade name and to sell the Disputed Designs after it learned of Merit's "Sirena" trademark and received a cease and desist letter from Merit. In defense of Merit's claim for trademark infringement, Colibri asserts that its use of the name and designs was done in good faith upon advice from counsel. Nevertheless, Colibri has asserted attorney-client privilege as to communications made during the course of Colibri's adoption and use of the name and designs. However, Colibri has asserted the claimed privilege only as to some communications for its own benefit and convenience. Such a "selective waiver" of privilege is impermissible and constitutes a complete waiver of the attorney-client privilege on these issues. Thus, Merit respectfully requests that this Court compel Colibri to provide all documents in their

full, unredacted form, and to provide deposition testimony concerning its communications with trademark counsel pertaining to its decision to use and/or continue to use the "Serena" trade name and to sell the Disputed Designs.

## Statement of Facts

Colibri filed this action for declaratory judgment following its receipt of a cease and desist letter (the "Cease and Desist Letter") dated August 24, 2004 from Merit. Merit filed a counterclaim alleging trademark infringement as a result of Colibri's use of the name "Serena" in connection with the sale of jewelry.[1] Additionally, Merit alleges copyright infringement based upon Colibri's marketing and sale of earrings and a necklace (the "Disputed Design") that were identical to the copyrighted Sirena mermaid design (the "Copyrighted Design").

Merit discovered that Colibri was marketing jewelry under the "Serena" name during the JCK Las Vegas trade show in June, 2004. Shortly thereafter, Merit learned through one of its customers that Colibri was selling the Disputed Design jewelry. On August 24, 2004, Merit served a Cease and Desist Letter demanding that Colibri stop using the "Serena" name and selling the Disputed Deign jewelry. *See attached* **Appendix A** (Cease and Desist Letter). Despite receipt of the Cease and Desist Letter, Colibri continued to use the "Serena" name and to sell the Disputed Design jewelry. *See attached* **Appendix B** (Deposition of Frederick Levinger, pp. 86-87). Colibri contends that its decision to do so was based upon the advice of its counsel. In fact, Colibri's privilege log discloses certain communications of August 29, 2004 and August 30, 2004, regarding its counsel's "advising of potential infringement" and regarding "potential civil litigation." *Attached*

---

[1] Merit had previously registered and used the phonetically equivalent "Sirena" in commerce for its profitable jewelry line.

**Appendix C** (privilege log).

Further, Colibri's interrogatories and the deposition testimony of its employees repeatedly refer to counsel's advice. Thus far, Merit has deposed Colibri's President, Frederick Levinger, its Executive Vice President, Mike Reynolds, its Executive Director of Ladies' Jewelry, Jane Mogayzel, and its trademark attorneys, Elliot Salter and Robert Salter. These employees have testified that Colibri requested trademark counsel to determine the availability of the name "Serena" and, based upon counsel's representation that the name was available, proceeded to use the name in connection with the sale of jewelry. *See attached* **Appendix B** (Levinger Depo., pp. 31-32); *attached* **Appendix D** (Deposition of Jane Mogayzel, pp. 10-11*)*; *attached* **Appendix E** (Deposition of Michael Reynolds, pp. 13-14). They have also testified that the decision to continue to use the name after Merit's Cease and Desist Letter of August 24, 2004 was based upon the advice of counsel. President Levinger testified that Colibri forwarded the Cease and Desist Letter to counsel for advice on how to respond. **Appendix B** (Levinger Depo., p. 87). In its interrogatory answers, Colibri contends that Levinger, Reynolds and Mogayzel – acting in their corporate capacities – decided to continue to market and sell both the "Serena" collection and the Disputed Design Jewelry after receipt of Merit's Cease and Desist Letter based upon their consultations with counsel. *See attached* **Appendix F** (Colibri's Answers to Merit's Interrogatories, Ans. # 14). For example, Colibri's Answer to Interrogatory Number 14 states that:

> Frederick Levinger, Michael Reynolds, Jane Mogayzel, and outside counsel reviewed the [Cease and Desist] letter. Colibri did not conduct any additional investigation of statements included in that letter. Levinger, Reynolds and Mogayzel, in consultation with counsel, decided to continue using the Serena name on the grounds that the U.S. Trademark Office had published the Serena mark for comment and there is no likelihood of confusion. Levinger, Reynolds

> and Mogayzel, in consultation with counsel, decided to continue selling Disputed Design jewelry on the grounds that the jewelry does not infringe on Merit's copyright.

*Id.* In its interrogatory answer No. 22, Colibri identifies its employees *and counsel* as persons responsible for the adoption, search, registration, filing and use of potential trademarks, copyrights, design patents and their international counterparts for Colibri. *Id.* President Levinger has confirmed this, stating: "I can assure you, if we had known you had a copyright on that piece, we certainly would have chosen something else." *Attached* **Appendix B** (Levinger Depo pp. 59-60).

Colibri has even allowed its trademark counsel to testify regarding his interaction with Colibri concerning the "Serena" name. Attorney Robert Salter testified extensively regarding the search process, his specific memory of searching the availability of the Serena name, Colibri's trademark application, the Cease and Desist Letter, his attorneys' fees, and his advice to Colibri regarding the availability of the name Serena for use. *Attached* **Appendix G** (Deposition of Robert Salter pp. 12-46). However, when questioning focused on the time frame following Colibri's receipt of the Cease and Desist Letter, Colibri's counsel refused to answer on the basis of attorney-client privilege. *Id.* at pp. 47-48.

Despite that a claim of reliance upon advice of legal counsel is its most prominent defense, Colibri has asserted the attorney-client privilege and has instructed witnesses not to answer questions regarding counsel's advice following receipt of the Cease and Desist Letter.[2] Colbri has selectively produced some documents from its counsel, but has not produced communications regarding its

---

[2] Merit contends that these communications are relevant because they may refer to or help explain the meaning of communications that occurred prior to Merit's notice to Colibri. Furthermore, it is undisputed that Colibri continued to use the "Serena" name and the Disputed Designs even after Merit's notice. The documents are relevant to assessing Colibri's claim of good faith after that time.

continued use of the infringing name and designs after receipt of Merit's Cease and Desist letter. This selective application of the attorney-client privilege is impermissible; reliance upon counsel's advice and assertion of this reliance in formulating a defense of good faith use of the trademark and design abrogates the attorney client privilege. *See XYZ Corporation v. United States*, 348 F.3d 16, 23 (1st Cir. 2003). Merit submits that it is entitled to full discovery on this issue, including full cooperation at depositions and unredacted production of all documents[3] related to Colibri's decision to use or continue to use the "Serena" trade name and to sell the Disputed Design Jewelry or otherwise related to its claim of good faith reliance upon the advice of counsel.

## ARGUMENT

### A. COLIBRI HAS WAIVED THE ATTORNEY-CLIENT PRIVILEGE, AS IT RELATES TO THE REQUESTED INFORMATION, BY VIRTUE OF ITS SELECTIVE APPLICATION OF THE PRIVILEGE

The attorney client privilege is one of the oldest privileges for confidential communications known to common law. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in observance of law and administration of justice." *Id.* at 389. For the "privilege to attach to a communication, it must have been made in confidence and for the purpose of securing or conveying legal advice. The privilege evaporates the moment that confidentiality ceases to exist." *XYZ Corporation v. United States*, 348 F.3d 16, 23 (1st Cir. 2003). Courts must, therefore, exercise significant restraint in applying the privilege only to the extent

[3] Colibri's selectivity falls into three basic categories: documents produced without redaction, documents produced with redaction, *see,* e.g., attached **Appendix H** (selected redacted documents), and documents withheld. *See attached* **Appendix C** (privilege log).

necessary to achieve its underlying goals. Moreover, the party asserting the privilege has the burden of proving its "application to the communications at issue and that it has not been waived." *Id.* at 22.

Colibri cannot meet its burden in this case because it has waived any privilege that it might otherwise have by raising an "advice of counsel" defense, and by allowing discovery favorable to its position. A party waives the attorney-client privilege by implication when the party places otherwise protected information in issue for personal benefit through some affirmative act. *Id.* (citing Jack B. Weinstein and Margaret A. Berger, *3* Weinstein's Federal Evidence §503.41[1] (Joseph M. McLaughlin ed. 1997)). In such a situation, allowing the privilege to protect other information on the same subject would be unfair to the opposing party. *Id.* Thus, courts find waiver of the attorney-client privilege by implication where the party "(i) testifies concerning portions of an attorney-client communication, (ii) places the attorney-client relationship itself at issue, or (iii) asserts reliance on an attorney's advice as an element of a claim or defense." *Id.* (citing *Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir. 1982)). The First Circuit recognizes that an "advice of counsel" element to a party's defense presents "a paradigmatic" example of waiver by implication:

> When [an advice of counsel] defense is raised, the pleader puts the nature of its lawyer's advice squarely in issue, and, thus, communications embodying the subject matter of the advice typically lose protection. Implying subject matter waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield. Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process.

*XYZ Corporation*, 348 F.3d at 24 (citations omitted). *See also United States v. Bilzerian*, 926 F.2d

1285, 1292 (2d Cir. 1991) (defendant's testimony that he thought his actions were legal put his knowledge of the law and the basis for his understanding of what the law required in issue, thereby waiving attorney-client privilege); *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) (claim of good faith reliance on governmental representations waived attorney-client privilege); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (assertion of qualified immunity defense waived attorney-client privilege); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 979 (D. Del. 1982) *aff'd*, 758 F.2d 668 (Fed. Cir. 1984), *cert. denied*, 471 U.S. 1066 (1985) ("[a] client . . . may waive the privilege by deliberately injecting into the case the advice which he received from his attorney"). Implied waiver is unambiguously applicable where a party discloses some privileged communications in support of a claim or defense, but asserts the privilege as to other matters on the same subject. In these cases the privilege is deemed waived – the court will not allow a general rule of "confidentiality to be used as a tool for manipulation of the truth-seeking process." *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir., 1982). *See also* 8 J. Wigmore, Evidence in Trials at Common Law § 2327 at 638 (J. McNaughton rev. 1961) ("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter."); *International Tel. & Tel. Corp. v. United Tel. Co.*, 60 F.R.D. 177, 185-86 (M.D. Fla. 1973) ("If the client or his attorney, at his insistence, takes the stand and testifies to privileged communications in part this is a waiver as to the remainder... about the same subject").

Colibri's partial disclosure of allegedly privileged documents coupled with the partial deposition testimony of its key employees and attorneys constitutes a textbook example of the "advice of counsel" waiver-by-implication recognized by courts. Not only has it asserted the

defense, Colibri has chosen to disclose privileged information that it considers helpful. In order to properly protect the attorney-client privilege, Colibri could have shielded all attorney-client communications and produced a privilege log for all such documents. Instead, Colibri has placed these communications squarely at issue by asserting an "advice of counsel" defense and has indicated its intent to press that defense by allowing certain testimony and producing portions of others that tend to support its position. Every Colibri executive who has testified has stated that before using the trade name "Serena" Colibri sent this name to counsel for investigation and counsel informed them that the name was available for use. Colibri has also produced selected documents purporting to memorialize these communications.

Despite Colibri's limited production and cooperation in depositions, Colibri refuses to proceed similarly with regard to discovery of communications made after Merit's Cease and Desist Letter of August 24, 2004, even though it has plainly asserted its reliance on counsel as the basis for its continued use of the infringing name and designs. As a consequence, Merit respectfully requests that this Court grant its motion to compel and thereby thwart Colibri's blatant attempt to use discovery "as a tool for manipulation of the truth-seeking process." *In re Sealed Case*, 676 F.2d at 807.

**Conclusion**

Colibri asserts that its use of the Serena name was based upon conversations and advice from counsel but has attempted to selectively produce documents and deposition testimony to support this defense, while continuing to assert privilege regarding substantially similar facets of these communications. Such a "selective waiver" of privilege is impermissible and constitutes a complete waiver of the attorney client privilege on these issues.

WHEREFORE, Merit Diamond Corporation respectfully requests that this Honorable Court grant its Motion to Compel Further Discovery. Merit requests that Colibri be ordered to produce **all documents** in unredacted form, including the documents contained on Colibri's Privilege Log. Additionally, the deponents who have, on the basis of attorney-client privilege, refused to answer questions pertaining to counsel's role in the decision to continue using the Serena name and marketing the Disputed Design after receipt of the cease and desist letter should be compelled to answer deposition questions pertaining to these issues.

MERIT DIAMOND CORPORATION

By: [signature]

J. Richard Ratcliffe #2603
RATCLIFFE BURKE HARTEN & ELIAS LLP
Counsel for Defendant
1600 Financial Plaza
Providence, Rhode Island 02903
Telephone: 401.331.3400
Facsimile: 401.331.3440

Of counsel:

David J. Molton, Esq. (DM-1106)
*pro hac vice*
Counsel for Defendant
BROWN RUDNICK BERLACK ISRAELS LLP
7 Times Square
New York, NY 10036
Telephone: 212.704.0100
Facsimile: 212.704.0196

**CERTIFICATION**

I hereby certify that on the 12th day of October, 2005, a true and accurate copy of the within was mailed, postage prepaid, to:

Steven E. Snow, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903

Margaret M. Canosa