# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

COLIBRI CORPORATION,
Plaintiff,

v.

MERIT DIAMOND CORPORATION,
Defendant.

C.A. No. 04-397 ML

## PLAINTIFF COLIBRI CORPORATION'S RESPONSES TO DEFENDANT AND COUNTERCLAIM PLAINTIFF'S FIRST SET OF INTERROGATORIES, NOS. 1-25

Plaintiff Colibri Corporation ("Colibri") hereby responds to Defendant and Counterclaim Plaintiff Merit Diamond Corporation's ("Merit") First Set of Interrogatories as follows:

**INTERROGATORY NO. 1:**

Identify when and by what means Colibri came to adopt use of "SERENA," "SERENA COLLECTION," and the Disputed Designs.

**RESPONSE NO. 1:**

The name Serena was suggested to Colibri by an outside advertising consultant in 2003. Colibri had outside counsel review the name Serena to determine whether it was available for use in connection with jewelry. After being advised that the Serena name was available, Colibri filed a notice of intention to use Serena with the U.S. Patent and Trademark Office on October 31, 2003. Colibri began to use the name in commerce in the spring of 2004.

The Disputed Design jewelry was selected by a merchandise consultant for Colibri, Allan Bloom. Bloom advised Colibri that the Disputed Design items were from the

general line of KBS, a jewelry distributor based in India. Colibri placed an order for the Disputed Design jewelry in March, 2004.

**INTERROGATORY NO. 2:**

Except as otherwise provided in Response to Interrogatory No. 15, below, identify each way that Colibri used "SERENA" and "SERENA COLLECTION" and the Disputed Designs; each product for which those designations and designs were adopted; whether Colibri conceived or considered alternative designations and designs (i.e., other than "SERENA" and "SERENA COLLECTION," and the Disputed Designs) for each such product, including jewelry products shown in Exhibit A of Colibri's Complaint and for the Disputed Designs; all such alternative designations and designs; the reasons why Colibri did not adopt each of such alternative designations and designs; and all documents relating to such alternative designations and designs.

**RESPONSE NO. 2:**

Colibri used the name Serena in connection with the jewelry items pictured in Exhibit A to its complaint. Colibri was provided with a list of other possible names by its outside advertising consultant, but decided to use Serena because it liked that name the best and because it was advised that the name was available for use in connection with jewelry. Colibri's uses of the name Serena are reflected in its catalog and the other marketing materials produced in response to Merit's request for production of documents. Documents relating to Colibri's selection of the Serena name are produced in response to Merit's request for production of documents.

Colibri never "adopted" the Disputed Design for jewelry. It purchased those jewelry items from the general line of a jewelry distributor based in India.

**INTERROGATORY NO. 3:**

Identify the persons(s) most knowledgeable concerning Colibri's use of "SERENA," "SERENA COLLECTION," and the Disputed Designs, including, but not limited to, who at Colibri was responsible for the decision to adopt "SERENA," "SERENA COLLECTION," and the Disputed Designs, for selecting the name "SERENA" and "SERENA COLLECTION" for use by Colibri, and for selection of the Disputed Designs by Colibri and selection of products for Colibri's catalogs.

**RESPONSE NO. 3:**

Jay Lazar, Lazar Stricker Co., 10 East 39th Street, New York, NY 10016

Frederick N. Levinger, Colibri Corp., 100 Niantic Ave., Providence, RI, 02907

Jane Mogayzel, Colibri Corp., 100 Niantic Ave., Providence, RI, 02907

Michael Reynolds, Colibri Corp., 100 Niantic Ave., Providence, RI, 02907

Allan Bloom. Colibri no longer works with Mr. Bloom. His last known address is 166 Micki Drive, Morganville, NJ 07751.

**INTERROGATORY NO. 4:**

Identify all persons associated with creation of the catalog from which Exhibit C of the Consent Order entered into court on December 10, 2004, was excerpted.

**RESPONSE NO. 4:**

Allan Bloom.

**INTERROGATORY NO. 5:**

State the total dollar volume of sales in the United States, by year, for each product form (e.g., necklace, pendant, bracelet, earring, ring, etc.) for jewelry products sold under "SERENA," "SERENA COLLECTION," and the Disputed Designs for each since their introduction to the market; the price/s at which the products were sold; and Colibri's profit from the sale of such jewelry products.

**RESPONSE NO. 5:**

Colibri's 2004 sales of Serena jewelry totaled $551,891. Sales and average prices by product form are as follows:

| | | | | |
|---|---|---|---|---|
| VSN109600C | SS/18K OVAL CITRINE PENDANT | 46 | 4,483 | 97.47 |
| VSN109600B | SS/18K OVAL BLUTPZ PENDANT | 82 | 8,014 | 97.73 |
| VSN109600A | SS/18K OVAL AMY PENDANT | 34 | 3,312 | 97.41 |
| VSN109500B | SS/18K CUSHION BLTPZ PENDNT | 57 | 3,130 | 54.91 |
| VSN109500A | SS/18K CUSHION AMY PENDANT | 53 | 2,934 | 55.35 |
| VSN109100A | SS/18K OCTAGON AMETH PENDNT | 52 | 5,699 | 109.61 |
| VSN108700B | SS/18K PILLOW BL TOPAZ PND | 98 | 6,151 | 62.76 |
| VSN108700A | SS/18K PILLOW AMEY PENDANT | 75 | 4,707 | 62.76 |
| VSN108300R | SS/18K PEAR SHP RHODOLT PEN | 229 | 15,926 | 69.55 |
| VSN108300B | SS/18K PEAR BLTOPAZ PENDANT | 86 | 5,926 | 68.91 |
| VSN108300A | SS/18K PEAR SHP AMY PENDANT | 213 | 14,921 | 70.05 |
| VSN108200C | SS/18KT OVL CITRINE PENDANT | 281 | 33,785 | 120.23 |
| VSN108100B | SS/18K OCTAG BLTOPAZ PEND | 294 | 35,257 | 119.92 |
| VSN108100A | SS/18K OCTAGON AMETHYS PEND | 170 | 20,173 | 118.66 |
| VSN108000P | SS/18KT RND PERIDOT PENDANT | 161 | 11,125 | 69.10 |
| VSN108000C | SS/18KT RND ANT CITRINE PND | 63 | 4,371 | 69.38 |
| VSF109700B | SS/18KT LG CUSHION BLTPZ RG | 73 | 8,703 | 119.22 |
| VSF109600C | SS/18K OVAL CITRINE RING | 39 | 3,377 | 86.59 |
| VSF109600B | SS/18K OVAL BLU TOPZ RING | 60 | 5,226 | 87.10 |
| VSF109600A | SS/18K OVAL AMETHYST RING | 37 | 3,220 | 87.03 |
| VSF109100A | SS/18K SQ AMETHYST RING | 36 | 3,720 | 103.34 |
| VSF109000A | SS/18K RECTNGULAR AMY RING | 61 | 8,961 | 146.90 |
| VSF108600A | SS/18KT AMETHYST RING | 39 | 5,815 | 149.11 |
| VSF108500B | SS/18K OVAL BLUE TPZ RING | 50 | 7,150 | 143.00 |
| VSF108400A | SS/18K PEAR SHP AMY RING | 28 | 3,991 | 142.55 |
| VSF108300R | SS/18K PEAR SHP RHODOLT RNG | 153 | 11,148 | 72.86 |
| VSF108300B | SS/18K PEAR SHP BLTOPAZ RNG | 62 | 4,436 | 71.54 |
| VSF108300A | SS/18K PEAR SHAPE AMY RING | 154 | 11,409 | 74.09 |
| VSF108100B | SS/18KT OCTAG BLUTOPAZ RING | 220 | 22,847 | 103.85 |
| VSF108100A | SS/18K OCTAGON AMY RING | 131 | 13,429 | 102.51 |
| VSF108000P | SS/18K RND ANTQ PERIDOT RNG | 139 | 8,691 | 62.53 |
| VSF108000C | SS/18K RND ANTQ CITRINE RNG | 58 | 3,647 | 62.88 |
| VSE109600C | SS/18K OVAL CITRINE EARRING | 35 | 3,833 | 109.51 |
| VSE109600B | SS/18K OVAL BLTOPAZ EARRING | 59 | 6,462 | 109.53 |
| VSE109600A | SS/18K OVAL AMETHYST EARRNG | 28 | 3,065 | 109.47 |
| VSE109500B | SS/18K CUSHION BLTPZ EAR | 51 | 3,800 | 74.52 |
| VSE109500A | SS/18K CUSHION AMY EAR | 47 | 3,544 | 75.40 |
| VSE109100A | SS/18K OCTAGON AMETH EARRNG | 30 | 3,939 | 131.31 |
| VSE108700B | SS/18K PILLOW BL TOPAZ EAR | 72 | 7,035 | 97.71 |
| VSE108700A | SS/18K PILLOW AMY EARRING | 67 | 6,570 | 98.07 |
| VSE108300R | SS/18K PEAR SHP RHODOLIT ER | 226 | 19,200 | 84.95 |
| VSE108300B | SS/18KT PEAR BL TOPAZ EAR | 81 | 6,937 | 85.64 |
| VSE108300A | SS/18K PEAR SHP AMY EARRING | 213 | 18,355 | 86.17 |
| VSE108200C | SS/18K OVAL CITRINE EARRING | 258 | 30,947 | 119.95 |
| VSE108100B | SS/18KT OCTAGON BLUTPZ EAR | 263 | 31,541 | 119.93 |
| VSE108100A | SS/18K OCTAGON AMETHYST EAR | 152 | 17,999 | 118.41 |

| | | | | |
|---|---|---|---|---|
| VSE108000P | SS/18KT RND PERIDOT EARRNG | 150 | 14,654 | 97.70 |
| VSE108000C | SS/18KT ANTIQUE CITRINE EAR | 60 | 5,903 | 98.38 |
| VSB109600C | SS/18K CITRINE BRACELET | 60 | 7,137 | 118.95 |
| VSB109600B | SS/18K BLUE TOPAZ BRACELET | 100 | 11,910 | 119.10 |
| VSB109600A | SS/18K BRACELET W/AMEYTYHST | 60 | 7,136 | 118.93 |
| VSB108700B | SS/18K BL TOPAZ CUFF BRACLT | 102 | 15,186 | 148.88 |
| VSB108700A | SS/18K PILLOW AMETHYST CUFF | 139 | 21,052 | 151.46 |
| | **TOTAL** | **5,587** | **551,891** | |

Colibri's 2004 sales of the Disputed Design jewelry were $62,624. Sales and average prices by product form are as follows:

| [redacted] | | | |
|---|---|---|---|
| VKE009600 | 14KW 1/5CTW SWIRL EARRINGS | 180 | 28,549 |
| VKN009600 | 14KW 1/5CTW SOLITAIRE PD+CH | 208 | 34,075 |
| | **TOTAL** | **388** | **62,624** |

Colibri's net profit after freight, duty, boxing, advertising, packaging and introductory display material was negligible.

**INTERROGATORY NO. 6:**

Identify all customers to whom jewelry products have been sold by Colibri under "SERENA" and "SERENA COLLECTION," and with the Disputed Designs, including the dates of sale and the form in which the jewelry products were sold (e.g., necklace, pendant, bracelet, earring, ring, etc.).

**RESPONSE NO. 6:**

Colibri sold Serena jewelry items starting June 2, 2004 and ending December 22, 2004. It sold Disputed Design jewelry starting May 18, 2004 and ending December 1, 2004. Colibri will identify customers for which it has records upon the entry of a suitable protective order.

**INTERROGATORY NO. 7:**

Identify the manufacturer, the supplier of raw materials, and all documents that relate to the manufacture of goods with the designation "SERENA" and "SERENA

COLLECTION" and goods with the Disputed Designs and state the amount paid by Colibri for said goods.

**RESPONSE NO. 7:**

Colibri's Serena jewelry was manufactured by Crystalline, Goldfine, and DWL. The supplier of raw material is not known by Colibri. Colibri paid $249,446 for the goods. The Disputed Design jewelry was purchased from a distributor based in India. Colibri does not know the manufacturer of those items or the supplier of raw materials. Colibri paid $27,867 for the goods.

Colibri does not possess any documents relating to the manufacture of Serena jewelry or the manufacture of the Disputed Designs.

**INTERROGATORY NO. 8:**

State when Colibri first became aware of Merit's "SIRENA COLLECTION" mark, "SIRENA COLLECTION (with design)" mark, "SIRENA" mark, and Copyrighted Designs, and describe the circumstances of how Colibri first became aware of Merit's "SIRENA COLLECTION" mark, "SIRENA COLLECTION (with design)" mark, "SIRENA" mark, and Copyrighted Designs.

**RESPONSE NO. 8:**

Colibri first became aware of Merit's Sirena jewelry in June 2004 at a trade show in Las Vegas, Nevada. A Merit representative approached the Colibri representative in attendance and indicated that Merit was selling Sirena jewelry, but that Colibri's use of the Serena name was not a problem.

**INTERROGATORY NO. 9:**

State whether Colibri ever conducted a study, investigation, marketing survey, survey of customers or potential customers, trademark, trade name, copyright, freedom to use, or similar search and report with respect to use and availability of "SERENA" and/or "SERENA

COLLECTION," and with respect to the Disputed Designs, and identify all documents that relate to any such studies, investigations, surveys, reports, and searches, including, but not limited to, those prepared by Colibri's counsel.

**RESPONSE NO. 9:**

Colibri's outside counsel conducted a review of the availability of the name Serena for jewelry items, and advised Colibri that the name was available. Documents relating to that review will be produced in response to Merit's request for documents.

**INTERROGATORY NO. 10:**

State whether Colibri ever sought or obtained an opinion of counsel relating to its adoption or use of "SERENA" and/or "SERENA COLLECTION," and with respect to Disputed Designs, and identify all documents relating thereto.

**RESPONSE NO. 10:**

See response to Interrogatory No. 9.

**INTERROGATORY NO. 11:**

Identify the factual basis for each Affirmative Defense claimed by Colibri in its Answer, Counterclaim and Affirmative Defenses and each denial by Colibri of the Affirmative facts set forth in support of Merit's counterclaim.

**RESPONSE NO. 11:**

Colibri's affirmative defenses are based on the following facts: (1) overall there is no similarity between the marks, (2) the products are different, (3) the advertising, promotion and channels of trade are different, (4) Colibri is not aware of any instances of actual confusion, (5) Colibri did not intend to infringe on Merit's Sirena name, (6) Sirena is not a strong mark because it has been used in commerce only since 2003, (7) Sirena has not developed secondary meaning among purchasers or potential purchasers of jewelry, (8) Sirena means mermaid in a foreign language, and is not inherently distinctive, (9) Merit purchased the Disputed Design

jewelry from a foreign vendor, (10) the Disputed Design jewelry and Merit's design are dissimilar.

Colibri anticipates that additional facts supporting its defenses will be disclosed during discovery, and reserves the right to supplement this answer accordingly.

**INTERROGATORY NO. 12:**

Identify all documents that support each Affirmative Defense claimed by Colibri in its Answer, Counterclaim and Affirmative Defenses and each denial by Colibri of the Affirmative facts set forth in support of Merit's counterclaim.

**RESPONSE NO. 12:**

Colibri will produce documents supporting its affirmative defenses in response to Merit's request for production.

**INTERROGATORY NO. 13:**

Identify all persons who have knowledge to support each Affirmative Defense claimed by Colibri in its Answer, Counterclaim and Affirmative Defenses and each denial by Colibri of the Affirmative facts set forth in support of Merit's counterclaim.

**RESPONSE NO. 13:**

Jay Lazar, Lazar Stricker Co., 10 East 39th Street, New York, NY 10016

Frederick N. Levinger, Colibri Corp., 100 Niantic Ave., Providence, RI, 02907

Jane Mogayzel, Colibri Corp., 100 Niantic Ave., Providence, RI, 02907

Michael Reynolds, Colibri Corp., 100 Niantic Ave., Providence, RI, 02907

Allan Bloom. Colibri no longer works with Mr. Bloom. His last known address is 166 Micki Drive, Morganville, NJ 07751

**INTERROGATORY NO. 14:**

Identify all individuals who received and/or reviewed the letter from Sharon Blinkoff to Frederick Levinger dated August 24, 2004 (which is attached to Colibri's Complaint

for Declaratory Relief as Exhibit B), all individuals who conducted any investigation into statements included in that letter, and all individuals who ultimately decided that Colibri should continue using "SERENA," "SERENA COLLECTION," and the Disputed Designs, stating for each person so identified which of these actions that person did, and identify the factual basis for Colibri's decision to continue using "SERENA," "SERENA COLLECTION," and the Disputed Designs.

**RESPONSE NO. 14:**

Frederick Levinger, Michael Reynolds, Jane Mogayzel, and outside counsel reviewed the letter. Colibri did not conduct any additional investigation of statements included in that letter. Levinger, Reynolds and Mogayzel, in consultation with counsel, decided to continue using the Serena name on the grounds that the U.S. Trademark Office had published the Serena mark for comment and there is no likelihood of confusion. Levinger, Reynolds and Mogayzel, in consultation with counsel, decided to continue selling Disputed Design jewelry on the grounds that the jewelry does not infringe on Merit's copyright.

**INTERROGATORY NO. 15:**

Identify all uses by Colibri of "SERENA" and "SERENA COLLECTION" in connection with the advertising and/or sale of jewelry products – including identifying each different label, hangtag, wrapper, container, advertisement, and brochure that bears "SERENA" and "SERENA COLLECTION," and identifying the media through which Colibri has advertisements promoting its "SERENA" and "SERENA COLLECTION" products, including the Disputed Designs, – and state Colibri's annual expenditures for advertising and promoting goods and services under "SERENA" and "SERENA COLLECTION" and for advertising and promoting jewelry with the Disputed Designs.

**RESPONSE NO. 15:**

Colibri objects to this Interrogatory on the grounds that the Disputed Design jewelry is not part of the Serena Collection. Without waiving this objection, Colibri states that its expenditures in 2004 on advertising and promotion of Serena jewelry were $68,508. Colibri's expenditures in 2004 on advertising and promotion of Disputed Design jewelry were part of an entire catalogue so cannot be reasonably calculated.

Colibri will produce documents reflecting its marketing of the Serena name and of the Disputed Design jewelry in response to Merit's request for production.

**INTERROGATORY NO. 16:**

Identify each person employed by Colibri and each outside agent or agency retained by Colibri who has been or now is responsible for:

(a) development, design, marketing, sales, advertising, catalogue drafting, and promoting of goods or services offered for sale and sold using "SERENA" and "SERENA COLLECTION," and/or the Disputed Designs:

(b) bookkeeping and accounting with respect to any goods and services offered for sale and sold by Colibri using "SERENA" and "SERENA COLLECTION," and bookkeeping and accounting with regard to the Disputed Designs.

**RESPONSE NO. 16:**

Persons responsible for development, design, marketing, sales, advertising, catalogue drafting and promotion of Serena jewelry include Janet Mason, Colibri; Jane Mogayzel, Colibri; Michael Reynolds, Colibri; Frederick Levinger, Colibri; Jay Lazar, Lazar Stricker.

Persons responsible for marketing, sales, advertising, catalogue drafting and promotion of the Disputed Design jewelry include Allan Bloom and Jay Lazar.

Bookkeeping and accounting are the responsibility of Colibri's Finance Department. There is no individual with responsibility relating to Serena jewelry or the Disputed Design jewelry.

**INTERROGATORY NO. 17:**

State whether Colibri has ever granted to any person any authorization or license to use the designation "SERENA" and "SERENA COLLECTION," and/or the Disputed Designs and, if so, identify: to whom such authorization or license was granted; the date it was granted; the terms and conditions of such authorization or license; the duration of permitted use; and the business, goods, and services for which the authorization or license was granted.

**RESPONSE NO. 17:**

Colibri has not authorized or licensed others to use Serena or the Disputed Design.

**INTERROGATORY NO. 18:**

Does Colibri contend that the goods and/or services that were offered for sale using "SERENA," "SERENA COLLECTION," and the Disputed Designs were not sold to impulse buyers? If so, state all facts that Colibri believes support its contention in this regard.

**RESPONSE NO. 18:**

Colibri objects to this interrogatory on the grounds that the term "impulse buyers" is vague and undefined.

**INTERROGATORY NO. 19:**

Does Colibri know of any instances of actual confusion between "SERENA," "SERENA COLLECTION," and Merit's "SIRENA," "SIRENA COLLECTION," and "SIRENA COLLECTION (with design)" marks? If so, provide factual details for each such instance of actual confusion.

**RESPONSE NO. 19:**

Colibri is not aware of any instances of actual confusion regarding Serena other than a telephone call from the merchandise manager of Reeds' Jewelers which was made at the behest of Sirena.

**INTERROGATORY NO. 20:**

Does Colibri contend that there is no chance for potential confusion between "SERENA," "SERENA COLLECTION," and Merit's "SIRENA," "SIRENA COLLECTION," and "SIRENA COLLECTION (with design)" marks? If so, state all facts that Colibri believes support its contention in this regard.

**RESPONSE NO. 20:**

Colibri contends that there is no likelihood confusion between Merit's Sirena jewelry and Colibri's Serena based on the facts that (1) overall there is no similarity between the marks, (2) the products are different, (3) the advertising, promotion and channels of trade are different, (4) Colibri is not aware of any instances of actual confusion, (5) Colibri did not intend to infringe on Merit's Sirena name, and (6) Sirena is not a strong mark because it has been used in commerce only since 2003.

**INTERROGATORY NO. 21:**

Identify all third party uses of "SERENA," "SERENA COLLECTION," and the Disputed Designs in connection with the sale of jewelry products.

**RESPONSE NO. 21:**

Colibri is not aware of any third party use of Serena or the Disputed Design in connection with jewelry.

**INTERROGATORY NO. 22:**

Identify each person who has been or is now responsible for decisions relating to adoption, search, registration, filing or use of potential trademarks, copyrights, design patents, and their international counterparts for Colibri.

**RESPONSE NO. 22:**

Frederick Levinger, Jane Mogayzel, Michael Reynolds, Jay Lazar, Elliot Salter Esq.

**INTERROGATORY NO. 23:**

Identify any Colibri policy and documents retarding adoption, search, or use of potential trademarks, copyrights, design patents, and their international patents and identify all trademark, copyright, design patent, and international counterpart applications that have been filed by Colibri for "SERENA" or "SERENA COLLECTION" or the Disputed Designs.

**RESPONSE NO. 23:**

Colibri has an informal policy of requesting that outside counsel review a potential name to determine whether it is available. Colibri filed a trademark application for Serena, which was subsequently withdrawn.

**INTERROGATORY NO. 24:**

With respect to United States Trademark Application Serial Number 76/555,942, filed on November 3, 2003:

(a) Identify all individuals responsible for abandoning that application; and

(b) State the reasons for abandoning that application and all facts supporting those reasons.

**RESPONSE NO. 24:**

Frederick Levinger and outside counsel. Colibri abandoned the application because it decided to stop using the name Serena to avoid litigation because sales and profit potential were not worth the litigation costs.

**INTERROGATORY NO. 25:**

Identify all officers, executives, administrators, employees and agents of Colibri, as well as any other person, who contributed to the preparation of these answers to Interrogatories and, for each person, identify such Interrogatory No. and sections to which that individual contributed in preparing answers.

**RESPONSE NO. 25:**

Frederick N. Levinger, Jane Mogayzel, William Malo, and counsel.

Submitted by,

COLIBRI COPRORATION

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (#1774)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: March 16, 2005

**VERIFICATION**

I, Frederick N. Levinger, am the President of Colibri Corporation and am authorized to sign this verification. I have read the Plaintiff Colibri Corporation's Responses to Defendant and Counterclaim Plaintiff's First Set of Interrogatories, Nos. 1-25 and know the contents thereof. I verify upon personal knowledge that those contents are true except as to those matters therein made upon information and belief, and as to such matters I believe them to be true.

Frederick N. Levinger

DATED: March 17, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFF COLIBRI CORPORATION'S RESPONSES TO DEFENDANT AND COUNTERCLAIM PLAINTIFF'S FIRST SET OF INTERROGATORIES, NOs. 1-25 was mailed, postage prepaid, on this 16th day of March, 2005.

J. Richard Ratcliffe, Esq.
Ratcliffe Burke Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

David J. Molton, Esq.
Buchanan Ingersoll, P.C:
140 Broadway, 35th Floor
New York, NY 10005

779010_1/7588-37